Morning, Your Honors. My name is Ralph Rogeri, and I represent the appellate in this case, Optional Capital. I'd like to reserve Did you ever diagram this case? Yes, Your Honor. It's confusing. For the jury in my closing argument, we had a number of diagrams. We would have liked to have been better, had submitted those actually into evidence. However, we were not permitted to use an expert in this case. And the essential defense throughout the entire time that we were doing discovery An expert for what? Well, to show the damages that the company sustained as a result of the fraud and conversion. To also show the relationship among and between the various defendants and how they were all interrelated. How Erica was controlling the bank accounts along with her brother Christopher. How Bora Lee was involved as well. Why do you need an expert for that? Well, ultimately it didn't make any difference because the jury was willing to listen to what we did put on. And I prepared a chart that I showed to them on the overhead or ELMO, if you will. Regarding all of the monies that were transferred from Korea as a result of the stop. Counsel, I have a question about the fraudulent concealment claim. And one of the elements, this is voluminous material and I'm confused by a lot of it. But one element that concerned me as to whether there was proof that the plaintiff lacked knowledge of the concealed fact of the board members being secretly elected. Which is part of your fraudulent concealment claim. And if they knew that, if the plaintiff knew that, then you couldn't make out a claim for fraudulent concealment. What evidence is there in the record that shows that the plaintiff did not know that Moore and Valenzuela had just been put on the board willy-nilly? Well, the problem that we have here is that the fox is basically in the hen house, if you will, Your Honor. The fraudsters here are the fiduciaries. Well, that doesn't help because it's clear that fraudulent concealment requires that the defrauded person be ignorant of the true facts. Because otherwise it's kind of a so what? If somebody conceals it but you knew it anyway, that's why it's an element, I guess. But the other elements I see evidence of, but how do we know that the plaintiff was not aware of the shenanigans in the election of these two board members? Because there is no way. The only people who had knowledge of those, of the shenanigans, were Christopher Kim, his wife Laura Lee, and Erica Kim. Where does it say that in the record? Well, I don't know that there is one piece of evidence that says that directly. But what we have here is that to change the board of directors, there had to have been a shareholders meeting. And at that particular shareholders meeting, these people were nominated and put before the entire shareholders meeting as to be voted on as the board of directors. Because the shareholders were the people who elected the board of directors. So essentially it was the shareholders of the company who were defrauded directly by. Okay. That's an interesting question then. So if you're dealing with a corporation, you're dealing with a fraudulent concealment claim under California law, is it the shareholders who must be the ones who are ignorant of the concealed fact? Because, you know, if it's an individual, it's easy. Joe didn't know or Sally did know. Is it the shareholders that we're talking about? Well, and I didn't address this legally in my brief, but my understanding of California law is that a corporation cannot be bound by the fraudulent acts of its fiduciary. So it would not be chargeable to the knowledge that Christopher Kim or Bora Lee had. At the time, they were representatives of a majority shareholder. They were still fiduciary of the company. So your position is that on the element of concealment, you're saying that there's ‑‑ I guess you're saying there's circumstantial evidence of ignorance on the part of the shareholders and it's the shareholders who are the ones who need to be ignorant under California law. Yes, Your Honor. I would say that the shareholders were definitely defrauded in this particular case because they were the ones who voted and Bora Lee came down there and said, we vote, we, the three corporations that they were using to acquire control, we vote for these people. And they knew at the time that Sandra Moore, Bora Lee, and Maurice O'Bannon, I submit, weren't going to do anything. Could we focus on the conversion count for a moment? What evidence do you have that Optional actually possessed the property at the time of conversion? Okay. Well, first of all, we have the big picture evidence. We have the fact that the company was in business before the respondents came in and took control of it. And it had investments and was receiving money. And Hung Chung Lim, I believe, testified at the trial that over the course of the year, he collected some 16 billion won. And then we have the amounts that were coming into the corporation pursuant to the stock fraud, the money that was being paid for the stock, an additional 30-some billion won. So we know that that money was coming into the corporation. And then we also have it actually coming into the corporation. It was an admitted fact that this money was given to the corporation. Now, the defense in this case was what I call the Sergeant Schultz defense. I know nothing here. And it was a small corporation. And most of the people who were involved in the corporation had long-term affiliations with Christopher Kim and Bora Lee. But we were able to secure the testimony of a young lady who was working there. And Christopher Kim and Bora Lee did not do the banking themselves. They did not go and physically withdraw the money. This raises the next question really I had, and that is, what evidence do you have that the Kim claimants actually took possession of the money? The evidence that we have is, number one, the accounting records of the company, the business records of the company, Exhibit No. 506, which was testified to and identified whenever one of these young ladies went and withdrew money from the bank. They had to come back for their own protection, if nothing else, and create a record that, in fact, they took this money out, and this is what they did with it. Do you have any actual bank records? Well, we had bank records, and Judge Collins refused to allow us to introduce those into evidence. At trial, I did confront Bora Lee with those particular records, and she had acknowledged them in response to a summary judgment motion, but we were precluded by Judge Collins from actually introducing the bank records into trial. However, the investigation was done both. I think we have the point, and I'd like to move on, if I may, because of your time constraints. What evidence do you have that Optional did, in fact, not give its consent to the disbursement of these funds? Well, the corporation, the purpose of the corporation, the only purpose that would be permissible for the corporation in this particular case to use those funds would be for investment purposes for the benefit of the entire corporation or some permissible corporate purpose. Now, there was no permissible corporate purpose here. There were no investments made. An investigation was done, and it would have to be a formal approval of the shareholders for the corporation to simply give away. So there's no board approval? There's no board approval. Is there any officer approval? There is no officer approval that is binding on the corporation. I mean, obviously, Christopher Kim was the person who was controlling the corporation, and he was stealing the money, and using these young women to help him do that, but the fact that he told them to essentially take the money from this account and place it in an account controlled by him. Now, if we accept that argument, you still have to show the degree of damage that was done here. And on Exhibit 506, eight of the 21 entries there show that someone other than Lee or Kim was the recipient of the funds. What evidence do you have to show that the defendants here actually damaged the corporation? The evidence that we have, I believe that the exhibits that you're talking about do not list them as either a suspense payment or a loan to Christopher Kim. The others identify the purpose as a suspense payment. Those eight that you're talking about didn't identify a purpose for the withdrawal. But we had an investigation that was done both by Hong Chung Lim and Mr. Jang that went to the banks, looked at the check numbers, because in Korea they use a check system similar to cashier's checks here, not checkbooks, but a cashier's type check. And so he, both of them, went, looked at each check number, went to the securities company where the checks had been deposited to and identified that they had, in fact, been deposited in those particular accounts. While we're tracing money, what evidence do you have that any of this money ever got to Alexandria or First Stafora? Well, whether it actually got to, that particular money got to Alexandria or First Stafora, we don't have a lot of evidence that the particular money that was converted got to Alexandria or First Stafora. I believe that in the criminal proceedings, which we asked you to take judicial notice of, they did a more specific tracing of all of the money that was converted from the company and identified about $12 million as being transferred from Korea to the United States. However, Christopher Kim admitted that with respect to the fraud, all of the money that, the stock fraud, all of the money that went into those accounts came from his sales of stocks that he had wrongfully acquired. Now, if we were to accept what you've told me today, we probably would have to consider rather favorably reversing the district court with respect to its taking this case entirely away, granting the JMOL at least. There'd be some evidence on each of the points raised, at least with respect to the conversion count. But the district court in the alternative granted a new trial. Why, how can we say that the district court used its discretion in saying that this evidence was still contrary to the weight of the evidence? You certainly at best have a circumstantial case at best, a legally sufficient case. But the district court, who was right there on the spot, says this is still contrary to the weight of the evidence. It's got to be tried again. What's your best case for saying that the court abused its discretion? The best case is two points. First, right after this particular case was decided by the jury. And the jury found that they believed that the evidence was clear and convincing for them in this case. But after that, Mr. Kim, who fled right before, right at about this time of the year, shortly before our trial in January, he made a decision that he was going to go to Korea and stop contesting his extradition and had the government take him to Korea, where he faced the criminal charges in Korea. And so at the time of the trial, he was unavailable to testify, and we had to use his deposition transcript. But he went there. They conducted their criminal proceedings in Korea. Three judges heard all the evidence, including 30-some witnesses. And he was convicted of a whole number of charges involving the false statements made in connection with the issuance of stock and in converting over 31 billion won from the company. So there's that evidence. And then, as he contested and he contested all the way to the Korean Supreme Court his conviction, during the course of those proceedings, he admitted that, in fact, he converted and was responsible for the conversion of the 31 billion won, as both the jury in this case found and the Korean criminal judges found there. So, really, there's nothing at the first trial. There was an argument, at least, from the defense that, hey, I didn't do it. One of these other people in this company must have taken those particular monies, and I didn't. Now there's not even that. He's been convicted, and it's admitted, not only convicted, but has himself admitted that he converted the money. And he's been convicted, as well, of making false statements and concealing evidence with respect to the stock transactions. So I submit that the evidence is overwhelming at this point in time and that a new trial would be a waste of time. We ought to simply just reinstate the verdict as the jury already found in this particular case. I reserve my remaining time. You're minus two and a half. Okay. Good morning, Your Honors. Eric Hone is for the appellee, Kim Defendants. In response to what Judge Graber raised with Mr. Regari about who should be informed as far as the concealment of the two board members, in plainest brief, they kept referring to these board members as non-interested board members. But they were interested. They actually went to Korea, held themselves out as owners of these two companies that were purchasing companies, and held themselves out as being interested persons, introduced themselves. That's actually not the question that I asked. I was asking a much more theoretical question, which is when a corporate plaintiff is claiming fraud by concealment, in proving the element of ignorance which has to be demonstrated, whose ignorance are we talking about? Is it the ignorance of the shareholders? I mean, a corporation is a thing, but who has to be, from whom is the concealment? And in this instance, at least at the time of the election, there's evidence that they had absolutely no idea that they were to be nominated and so on and so forth. So at that point, if they didn't know, then certainly somebody else didn't know. But who's the somebody else? Is it the shareholders? Practically speaking, it can't be the shareholders. It shouldn't be the shareholders, because otherwise, every time there's any type of statement or representation or work being done, you have to notify the shareholders that something is happening. It would have to be the officers of the corporation. That might be true in the normal kind of case, but where the particular fraud is in the election by the shareholders of members of the board, why wouldn't it be the ignorance of those shareholders that matters? If, in fact, that was an important fact, which I believe that the ---- You were about to say why you thought it wasn't important, but I'm still dealing with the question. Right. You know, if there's a presentation to the shareholders that these are the board members and they're willing to serve and, in fact, they're not willing to serve, I guess that can consider the concealment to the shareholders at that time. But in this case, that's not the ---- Are there any California cases that would help me with that? Yeah, I'm not aware of any. And, in fact, the plaintiff requested that during the trial requested that Korean law be applied and not California law as far as dealing with the company and the shareholders. So I think possibly the whole question may be moved because it's according to the plaintiff's own request and the Court's concession to that, that it was Korean law that should be applied, and I don't believe there was any Korean law that was presented on specifically in that issue. Well, the elements of fraud are under California law. The elements of fraud are, yes. Okay. Thank you. Thank you, Your Honor. Mr. Honig, I asked your opponent to give me, in effect, the rendition of the evidence that he relied upon on the conversion count, and I would be very interested in what you might have to say as to why there isn't at least sufficient circumstantial evidence to get him past the JMOL. So the only actual transaction that was presented on the conversion, the alleged conversion, was this low-level employee who did bank errands, according to the plaintiff, brought one amount of money to a securities company and made a deposit. Now, she did not say that this money came from the company. She didn't say it was optional money. She, in fact, said that T.J. Kim gave her the money and made a deposit. So there wasn't any evidence that, in fact, this money was optional money. And so that was the one transaction that only one person was able to testify from any personal knowledge. And so that transaction, and she had no knowledge of any of the other transactions. So from that one transaction, the plaintiff alleged that that circumstantial evidence, that the company's money was in all these slips, was taken from them and then put into the possession of the plaintiff's, the defendant's. And I don't see how that one transaction, which doesn't even establish that it was the plaintiff's money, could reflect on all the other transactions, which don't even say. Scalia. How about this Exhibit 506? Doesn't that show that there, in fact, was a transfer of money? Well, the interesting thing about 506 is each one of those slips has the approval of a supervisor or accounting person or someone. So that shows that someone consented to whatever that transaction is. So the plaintiff didn't prove lack of consent. In fact, it showed consent. Also, eight of the 21 slips did not have the names of the any of the defendants on them. And one of them showed a suspense. It was called a suspense receipt as opposed to a suspense payment. What does it show as to who was the recipient? It doesn't show. Oh, as to the receipt? As to the recipient. The recipient would be the company, because it was a receipt to the company, not a payment to someone else. That's why it was called a receipt as opposed to a payment. And there was no evidence, no banking records, no anything else that showed that any of this money went into the possession of any of the defendants. And number one, that any of the money came out of the possession of the plaintiff. So circumstantial evidence was that essentially the company had money come into it, had funds that were deposited with it. And our defense in what we argued to the court was that that money that came in was one of the defendants' money, and Mr. Kim's money when he bought the company and issued the capital increases, he brought in, he infused $30 million of his own money into the company. And at the end, he sold his own stock and got back that money. And I think what essentially happened by the plaintiff is they conflated that and saw that the money was that Mr. And it's undisputed that Mr. Kim put $30 million of his own money into the company, that when he sold his stock and took his money back, that they tried embezzlement, that they tried conversion. And it's in their own papers that they admit that he put his own money into the company. What is the relevance, if any, of the later criminal conviction involving Mr. Kim? First of all, the ultimate conviction in Korea should not be, in the context of that, it should not be admissible, because Mr. Kim has disputed that all the way through. The Korean system is totally- He doesn't dispute the fact of his conviction, does he? No, he doesn't dispute the fact of his conviction for the stock manipulation charge, which is what the high court eventually found, didn't find. He wasn't convicted in Korea for embezzlement. He wasn't convicted for conversion or some other type of California state common law offense. But Mr. Kim, and the evidence we supported in our opposition to the judicial notice, so Mr. Kim has continued to dispute that. The effect should be nothing in this court other than the fact that there is this high court conviction for stock manipulation. And this court had already ruled in the related case that that's the limit as far as the admissibility of that. And I suggested that that could be considered raised judicata from the Ninth Circuit's previous decision. It's on page 11 of the previous order. Mr. Honig, if we can return to the conversion claim for a moment. Sure. Let's assume, for the sake of argument only, that there is legally sufficient circumstantial evidence on the various elements of a conversion claim. The district court, as you know, still granted in the alternative a motion for new trial. I asked your colleague for the point as to why we should reverse for abuse of discretion on that claim. I'd like to hear your side of it. Why do you think that even if there is legally sufficient evidence, you ought to get a new trial out of this? Because in that case, the evidence that was presented just didn't match the elements of the required elements in each of the jury instructions. The jury saw that Mr. Tim wasn't present because he was incarcerated. They didn't know that he was incarcerated in Korea. And Ms. Tim did not testify. And she was sitting there for the trial. It's my opinion in the trial that the jury didn't like that. And there's no instruction, like in a criminal case, that you can't take into consideration the failure to testify. So I think the jury didn't like that and didn't pay attention to the specific elements. We argued the elements, but it was an emotional type of case, an emotional issue. And I think if there has to be a new trial, I think a jury and maybe I'll do a better job. I guess what I'm trying to say is what evidence did you submit and what evidence did you argue to the jury that there was no conversion here? What's your best case? For the conversion, some of what we just discussed, which was there were whole cases about these slips. Well, these slips don't show what the plaintiff says that they show. And it also shows none of these slips and none of the records presented by the plaintiff show that any of the money was actually received by any of the defendants. And then I would concentrate again on the fact that Mr. Kim put in his own $30 million into buying the company, which is undisputed, and he sold the stock and that's what he got back out. And maybe I didn't do a good enough job in emphasizing that that's what it was, money in and money out. But I think I would concentrate on that evidence also, which I don't know if we'd have Mr. Kim available for a retrial, but I would. He actually sold stock and that's what happened. Yes, and it's undisputed. But he came out of the company. That's right. He sold his own stock, and it's in both plaintiffs' and defendants' briefs. And to whom did he sell the stock? He sold it on the market. There wasn't either of the parties identified, any particular persons. I think maybe one of the current managers. But the company lost some money. The company lost money. Mr. Kim sold his stock and left Korea. He was thought of at the time as an up-and-comer as far as a businessman there. He was in partnership with the now president of Korea, Yong Bak Lee. And so he was thought highly of. And then when he left, whatever happened happened, but he left the company. And so they didn't have this up-and-comer with all this money heading the company anymore. But, again, there's no evidence of any damage, specific damage that was or specific evidence of any damage to the company presented at trial either, which is a big part of our brief, that even if all the elements were proved, there was no evidence of specific damage that was proved. I don't think I have any more. I don't think the Court has any more questions. Thank you, Your Honor. Judge Braver, responding to your question about case authority, while I didn't cite it in connection with the duties with regard to shareholders and what have you, the Batson v. Strelow decision of the California Supreme Court, 68 Cal Second 662, and that deals with an agent of a property seller buying the property himself as a fiduciary, the duty is placed upon him to affirmatively show that he acted in the highest good faith and without concealment. I submit that a similar requirement holds to a fiduciary in this context when you are representing that these people are going to perform fiduciary responsibilities for a corporation that you cannot conceal that, in fact, they are not going to do that. They haven't been asked. They haven't consented. They are not planning on doing anything whatsoever. It is incumbent upon the fiduciary to make sure that that is disclosed to the corporation and particularly in this case to the shareholders whose consent to those people being elected you are attempting to secure at that particular shareholder meeting. So under the facts of this case, either under basic fiduciary law or the fact that there was an actual deception of the other shareholders who had to approve, and later on when the entire fraud broke down and after Christopher Kim and his wife had come to the United States, the minority shareholders in fact had to go into court and have the board of directors replaced and a new election for a new particular shareholder or a new board of director members. And turning to the issue of consent and the evidence supporting the conversion, again, I think that the jury in this case when it talks about the approval that are on the business records, yes, that is an approval from the next in line supervisor that in fact the employee went to the bank, took out the money and deposited it in this particular account and it's documented that that in fact occurred and that this form was filled out in an appropriate fashion. It's certainly not approval by somebody to consent to the theft of these funds by Christopher Kim, an employee who is also subject to Christopher Kim's orders and instruction. And I would also say that we also had circumstantial evidence from the investigations of Mr. Yang and Hung Chung Lim when they traced each and every one of these. They went to the bank, verified in fact that the money had been there in the possession of optional and was taken out on the dates indicated and was placed in these particular other securities accounts. These other security accounts were the same accounts that Christopher Kim was using to wire money back to the United States as part of the stock fraud and that the company itself optional had no particular dealings with these. There was no money left. There was no investments that it made during the entire one year that the corporation was under the control of Christopher Kim and Bora Lee. So with that, I would thank you all for your time and consideration and ask that you reinstate the jury verdict in this case. Thank you. Thank you. With that, this matter is submitted. We can pick the next one up. And that is USA versus DAS Court.
judges: Pregerson, Ripple, Graber